The Chibe Justice
delivered the opinion of the court, December 13, 1880:
The Court of Claims has found expressly that the condition of the vessel when she was discharged from the charter, which madedhe repairs sued for necessary, resulted from the ordinary wear and tear of the service in which she was engaged under the charter-party. This is conclusive against any recovery for these repairs. It was expressly provided in the charter-party that the government need not make good any loss arising from, ordinary wear and tear. Although, if this one fact had been omitted from the findings, a different judgment might with more propriety have been contended for, with it found, the conclusion reached by the court below was unavoidable.
This finding is not inconsistent with anything else that appears in the case. The vessel was sent up the Ashepoo River as a transport. She did land, under the orders of the general *632 in command of tbe expedition, at a place selected by liim against tbe objection of tbe master put in charge of her navigation by her owner, and she did ground and was badly strained while at the landing, but it is nowhere found that she would have grounded or that she would have been unusually strained if the master had obeyed the further order of the general and moved her away from the shore into the stream after the troops and horses were off. Certainly the government cannot be held responsible for losses arising from a disobedience by the master of the orders of a military officer in command of any expedition on which she was properly sent under her charter. She was chartered for war service and bound accordingly. If loss happened from a war risk,” that is to say, if the war was the proximate cause of the loss, the damage was to be made good by the government; but if it was caused by the refusal of the master to obey those in command of a military expedition to which the vessel was attached, the neglect of the inaster and not the war would be the proximate cause. This neglect of the master was a marine risk, which the owner assumed. Damages arising from such a risk the owner was bound to repair under his covenant to keep and maintain the vessel tight, stanch, and strong during the continuance of the charter. The findings, taken as a whole, are to be construed as meaning that the repairs put on the vessel after she was discharged from service were not rendered necessary by any of the risks assumed by the government under the charter.
What has thus been said is applicable also to the claim for deductions from the pay of the vessel during the mouth of August, 1864, for lost time and repairs after her return from the Ashepoo Kiver. The charter expressly provided that time lost in consequence of any breach of the covenants by the owner should not be paid for, and the court below in effect found that the damages repaired were caused by the neglect of the master to move the vessel out into the stream after the landing had been completed. No complaint is made in the petition of the amount of the charge. The right to recover is put entirely on the ground that the damages were such as the government was bound to repair, and, therefore, tha the repairs were not chargeable against the owner. In the petition the quartermaster’s and commissary’s stores are included as part of the *633 cost of the repairs, which was, no doubt, in accordance with the facts.
The money paid to Cannon for his services on board the vessel cannot be recovered from the United States. The claim was made by Cannon against the owner and not by the United States. It was voluntarily paid, with a full knowledge of all the facts. It may be that the payment was made to avoid a controversy with the United States, but that furnishes no ground of recovery. (Silliman v. United States, 101 U. S., 465.)
The judgment is affirmed.